[redacted]

**BHR MANAGEMENT**

**MAIL PAYMENTS TO: PO BOX 5117 South Fulton, TN 38257**

[redacted]

**RENTAL-PURCHASE AGREEMENT AND DISCLOSURE STATEMENT - MS**

This Rental-Purchase Agreement ("Agreement") is made and entered into on this 10th day of January, 2025, by and between BHR MANAGEMENT(or its successors or assigns), having its principal place of business at PO BOX 5117 South Fulton, TN, in Obion County, Tennessee hereinafter referred to as "Lessor" and

Consumer(s) Name(s): Clifton Holloway

Street Address: 123 Holly Hill Road City: Jayess County: ______ State: MS Zip: 39641

Phone Number(s) [redacted] hereinafter referred to as "Consumer".

For and in consideration of the mutual covenants and agreements contained herein, the adequacy of which is acknowledged by each party, Lessor leases to Consumer, and Consumer leases from Lessor that certain portable storage building and/or equipment hereinafter referred to as the "Leased Property" and further described in paragraph 1(a) below.

**DISCLOSURES**

The following information is hereby disclosed to the Consumer according to the Mississippi Rental-Purchase Agreement Act, Miss. Code Ann. § 75-24-151, et seq., and is to be considered a part of the terms and conditions of this Agreement.

1. (a) **Description of Leased Property (including serial number)**: Side Utility Width:10 X Length:20 USUTX-216746E-1020
Initial(s) CH Initial(s) ____

VERIFIED ON EXPENSE REPORT IN NETSUITE SERIAL NUMBER IS USUTX-216746E-1020-120123 AA 1/20/25

(b) **The Leased Property is**: New ____ or Used X.
Initial(s) CH Initial(s) ____

(c) **Cash Price of the Leased Property**: $ 5,150.58, plus applicable sales tax.
Initial(s) CH Initial(s) ____

(d) **Initial Rental Payment: (Payment required at the commencement of this Agreement.)**
The initial payment is:
Rental Payment $ 0.00 + Sales Tax $ 0.00 + Security Deposit $ 150.00 +
Cost Reduction Agreement (optional) $ 0.00 = Total $ 150.00.
Initial(s) CH Initial(s) ____

(e) **Rental Payments**: Payments will be due on the 10th day of each month after the Initial Payment is paid. The total monthly rental payment is $ 238.45 + Sales Tax (subject to change) $ 16.69 = $ 255.14.
The sales tax and total monthly rental payment amounts may change to reflect an increase (or decrease) in the sales tax rate made by the applicable governmental taxing authorities. Any monthly rental payment received by Lessor 5 days after the date payment is due will be late and the Consumer agrees to pay a reinstatement fee of $20.00 per each monthly rental payment that is paid late. Consumers may make monthly rental payments in advance. Such additional payments or overpayments will apply towards future rental payments. Consumer hereby expressly acknowledges and expressly agrees that Lessor has the unconditional right to increase the reinstatement fee upon notice to Consumer of the effective date and amount of any such increase.
Initial(s) CH Initial(s) ____

(f) **Rental Term**: **The initial term of this agreement is for one (1) month.** The consumer may renew this Agreement for consecutive terms of one (1) month by making rental payments in advance for each month that the Consumer desires to keep the Leased Property.
Initial(s) CH Initial(s) ____

(g) **Total Cost of Ownership (Total Number of Payments to Acquire Ownership)**: If Consumer renews this Agreement each month, for 36 months (including Initial Payment), for a total cost of $ 9,335.04, and otherwise complies with this Agreement, Consumer will own the Leased Property. This total dollar amount does not include other charges such as reinstatement fees, repossession and/or redelivery, or other charges associated with default. **Consumers should read this contract for an explanation of these charges.**
Initial(s) CH Initial(s) ____

(h) **No Ownership During Lease Term**: **THE LEASED PROPERTY IS OWNED BY BHR MANAGEMENT. THE CONSUMER WILL NOT OWN THE LEASED PROPERTY UNTIL THE CONSUMER HAS MADE THE NUMBER OF PAYMENTS AND THE TOTAL OF PAYMENTS NECESSARY TO ACQUIRE OWNERSHIP OR THE CONSUMER EXERCISES THE EARLY PURCHASE OPTION.**
Initial(s) CH Initial(s) ____

(i) **Early Purchase Option**: ***At any time after the Consumer has made the first rental payment, the Consumer may acquire ownership of the Leased Property by tendering 60 % of the difference between the Total Cost of Ownership and the total amount paid on the account (exclusive of taxes, reinstatement fees, and other charges.)***
Initial(s) CH Initial(s) ____

(j) **Cost Reduction Agreement**: **(OPTIONAL) This Agreement offers an optional Cost Reduction Agreement. If the Consumer chooses this option, the Lessor will reduce the amount of the monthly rental payment required. By**

**this Cost Reduction Agreement, the Consumer and the Lessor may, and do, mutually agree to this Cost Reduction Agreement instead of a Security Deposit. If the Consumer pays an additional $ 0.00 the Lessor will reduce the Consumer's monthly rental payment. The Lessor will refund the amount paid in consideration of the Cost Reduction Agreement, when, and only if, the Rented Property is voluntarily returned to the Lessor at the end of any renewal period without any repossession expenses or costs to the Lessor. However, any amount the Consumer may then still owe the Lessor for past due rental payments, damages, fees, repairs, or already paid sales tax will be deducted from the amount of the refunded payment. The Consumer and the Lessor mutually agree that this Cost Reduction Agreement payment is not and should not be construed as a down payment. The Cost Reduction Agreement payment is paid instead of a Security Deposit; however, it provides added benefit to the Consumer in that it reduces the required monthly rental payment. If the amount in this section is "0" or N/A, this option shall not have been selected.**
**[______________Accept Cost Reduction Agreement]**

(k) **Other Charges**: The total of monthly rental payments does not include other charges such as $20.00 reinstatement fees, $40.00 returned check fees, repossession and/or redelivery fees, or any other fees associated with default. **Consumers should read this Agreement for an explanation of these charges.**
Initial(s) CH Initial(s) ____

(l) **Maintenance**: The consumer is responsible for maintaining and/or servicing the Leased Property while it is rented, such that the Leased Property shall be in good working order and protected from damage beyond normal wear and tear.
Initial(s) CH Initial(s) ____

(m) **Warranty**: If any part of a manufacturer's express warranty covers the Leased Property at the time the Consumer acquires ownership of the Leased Property, it shall be transferred to the Consumer, if allowed by the terms of the warranty.
Initial(s) CH Initial(s) ____

(n) **Damage to Leased Property**: The Consumer is responsible for the Leased Property if it is lost, stolen, damaged more than normal wear and tear, or destroyed. In such case, the Consumer's liability will not exceed the fair market value of the Leased Property as of the time it is lost, stolen, damaged, or destroyed. Consumer shall obtain and maintain during the term of this Agreement, at Consumer's expense, property insurance in an amount at least equal to the cash price of the Leased Property (shown in paragraph (c) above) which shall insure against loss, theft, damage, or destruction of the Leased Property. The consumer is not required to purchase said insurance from the Lessor or any insurer owned or controlled by the Lessor. The insurance must be in the Consumer's name, and the Lessor must be shown as the additional insured and loss payee.
Initial(s) CH Initial(s) ____

(o) **Termination**: Consumer may terminate this Agreement without penalty by voluntarily surrendering or returning the Leased Property to Lessor, in good repair, reasonable wear and tear excepted, on the expiration of any rental term along with any past due rental payments.
Initial(s) CH Initial(s) ____

(p) **Reinstatement**: A Consumer who fails to make a timely rental payment may reinstate this Agreement, without losing any rights or options that exist under this Agreement, by payment of the following charges within five (5) days of the renewal date of this Agreement: (1) all past due rental charges; (2) if the Leased Property has been picked up, the reasonable costs of pickup and redelivery; (3) and the applicable reinstatement fee. If the Consumer has paid less than two-thirds (2/3) of the total payments necessary to acquire ownership and the Consumer has returned or voluntarily surrendered the Leased Property within the applicable reinstatement period, other than through judicial process, the Consumer may reinstate the Agreement during a period of not less than twenty-one (21) days after the date of the return of the Leased Property. If the Consumer has paid two-thirds (2/3) or more of the total payments necessary to acquire ownership, and the Consumer has returned or voluntarily surrendered the Leased Property within the applicable reinstatement period, other than through judicial process, the Consumer may reinstate the Agreement during a period of not less than forty-five (45) days after the date of the return of the Leased Property. Nothing in this section shall prevent the Lessor from attempting to repossess the Leased Property during the reinstatement period, but such repossession shall not affect the Consumer's right to reinstate. Upon reinstatement, the Lessor will provide the Consumer with the same Leased Property, if available, or with substitute property of comparable quality and condition.
Initial(s) CH Initial(s) ____

2. At the time of the execution of this Agreement, Consumer shall pay to Lessor a security deposit in the amount of $ 150.00 to be held by Lessor as security for the performance of all terms of this Agreement including, but not limited to, payment of charges related to the repossession and/or redelivery. **Such deposit (or such part thereof as has not been applied to remedy defaults of Consumer) shall be refunded, upon Consumer's request, without interest, only on the expiration of the term of this Agreement if Consumer has not been late on rental payments three (3) or more times, and if all of the obligations of Consumer have been performed or discharged and Consumer exercises option to purchase. Lessor may from time to time use the proceeds of the deposits to apply towards any breach by Consumer of the terms of this Agreement, and in the event of such application, upon demand of the Lessor, Consumer shall restore the deposit to its original amount.**
3. Consumer agrees to pay $40.00 for any check or ACH transaction that is returned for nonpayment.
4. Consumer shall not permit the Leased Property to be altered in any way, including the construction of shelves and/or

benches, the addition of any equipment and/or accessories, the connection of utilities of any type, or the placing of signs on the Leased Property. The Consumer shall not permit the Leased Property to be tied to or otherwise affixed to any real estate in such a manner that the same cannot be removed without damage to the Leased Property. **Unless otherwise designated, the Leased Property is not intended for animal occupancy. The Leased Property is not intended for human occupancy.**

5. The Consumer agrees not to, in any way; restrict the Lessor, its agents, and/or independent contractors from lawful access to the Leased Property. Consumer specifically grants to Lessor, its agents, and/or independent contractors specific right of entry onto the Consumer's property during the initial delivery of said Leased Property and during the repossession of such Leased Property, whether such repossession is at the request of Consumer or caused by Consumer's default.
6. The Leased Property shall be kept at the address shown on page one (1) as the Consumer's address. It may not be moved from that address without the prior written consent of the Lessor which consent shall not be unreasonably withheld. It is a violation of this Agreement to move the Leased Property without the Lessor's prior written consent.
7. Consumer may not assign any of Consumer's rights under this Agreement without the prior written consent of Lessor. Any attempt by the Consumer to assign this Agreement without the prior written consent of the Lessor shall be void.
8. The Lessor shall have the right to examine and inspect the Leased Property at all reasonable times. Lessor shall have the right to lawfully remove the Leased Property in the event of non-payment and/or default under the terms of this Agreement. This Agreement constitutes a written authorization for the Lessor to lawfully enter upon the Consumer's real property and take any reasonable means necessary to repossess the Leased Property if repossession can be accomplished without a breach of the peace. By signing this Agreement, Consumer also authorizes any person having an interest in the real property upon which the Leased Property is located, including but not limited to landlords, owners, and/or co-owners, the right to enter said property to assist Lessor in repossessing the Leased Property if repossession can be accomplished without a breach of the peace.
9. Before delivery of the Leased Property, Consumer shall give notice of Lessor's ownership interest in the Leased Property to all persons having an interest in the real property upon which the Leased Property is to be located, including but not limited to landlords, owners, and/or co-owners. The Consumer also consents to Lessor providing written and/or telephone notice to such persons.
10. Notwithstanding anything contained in this Agreement to the contrary, the Lessor shall not be liable to Consumer or any other person, entity, or corporation because of the loss of, damage to, or destruction of any contents contained from time to time in the Rental Property, unless such loss, damage, or destruction is due to the willful misconduct or gross negligence of the Lessor and/or its agent(s) or employee(s). In the event, and whether such loss, damage, or destruction of the contents kept in the Rental Property is due to the willful misconduct or gross negligence of the Lessor and/or its agent(s), employee(s), or otherwise, the liability of the Lessor shall not exceed the value of the Rental Property. In this regard, the Consumer warrants and guarantees to the Lessor that the Consumer will not place or store in the Rental Property anything more than the said limit of liability, and to do so will be at the sole peril of the Consumer. The Consumer waives, to the maximum extent permitted by law, any right of recovery against Lessor for damages caused by Lessor, its agents, or assigns, to the Consumer's real or personal property which may occur during the delivery or pick up of the Rental Property.
11. Consumer agrees to promptly remove all contents from the Leased Property at the termination of this Agreement, whether such termination is caused by Consumer's default, or by lapse of time. Lessor may elect that any contents not removed by Consumer at such termination are deemed abandoned by Consumer and same shall become the property of Lessor without any payment or offset thereof. If the Lessor shall not so elect, the Lessor may remove such contents from the Leased Property and store same at the Consumer's risk and expense.
12. In the event Lessor incurs costs and expenses in enforcing the terms of this Agreement due to nonpayment, breach, or other default by Consumer or by any agents, servants, or employees of Consumer, Lessor shall recover from Consumer and Consumer shall pay to Lessor, all of Lessor's costs and expenses resulting therefrom, including but not limited to court costs, reasonable attorney's fees, and other costs of collection. In the event, that the Consumer defaults in complying with the terms of this Agreement and the Lessor takes action to repossess the Leased Property, and the Consumer then pays the amount in arrears after the Lessor has incurred expenses to repossess same, the Consumer shall pay Lessor, in addition to the payments in arrears, reasonable expenses plus sales tax, if any, as reimbursement of repossession expenses.
13. The parties agree that Consumer has examined the Leased Property, knows the condition thereof, and has agreed to lease the Leased Property in an "as is" condition and that Lessor has made no representations, warranties, or promises of any kind or nature, either expressly or implied, as to the condition, quality, suitability, or fitness for a particular purpose of the Leased Property.
14. This Agreement is not to be construed as a security interest in the Leased Property described in paragraph 1(a). The Lessor is the lawful owner of the Leased Property until the Consumer fully and faithfully completes all obligations of this Agreement.
15. To the fullest extent permitted by law, the Consumer agrees that this Agreement shall be construed as an executory contract as defined by the United States Bankruptcy Code and Rules, as amended from time to time.
16. If any provision of this Agreement is invalid, illegal, or incapable of being enforced because of any rule of law, public policy, or otherwise, the provision shall be severed, and all remaining provisions of this Agreement shall nevertheless remain in full force and effect.
17. Consumer agrees that Lessor may contact Consumer by telephone at any telephone numbers associated with Consumer's account, including wireless telephone numbers, which could result in charges to Consumer, for Lessor to service

Consumer's account or to collect any amounts Consumer may owe. Lessor may also contact Consumer via text message or e-mail using any telephone number and/or e-mail address Consumer provides to Lessor. Methods of contact may include using prerecorded/artificial voice messages and/or the use of an automatic dialing device.

18. In the event Consumer is in default of this Agreement, Consumer agrees that Lessor may gather, verify, and assimilate information, both public and nonpublic, concerning Consumer, to collect any outstanding balance on Consumer's account with Lessor. Lessor may use any type of credit reporting agency, tracing service provider, social media, cell phone, landline telephone, text or e-mail, and automated telephone calling in connection with Lessor's effort to collect upon Consumer's outstanding obligation under this Agreement.
19. **The parties specifically consent and agree that any claims arising out of or relating to this Rental-Purchase Agreement must be brought by the Consumer in an individual capacity and not as a plaintiff or class member in any class or representative action.**
20. **Consumer and Lessor agree that all claims against Lessor must be brought exclusively in Obion County, Tennessee, the site of the home office of the Lessor. Consumer expressly waives any right to bring any claim against Lessor in any other jurisdiction and/or venue.**
21. **AGREEMENT TO SUBMIT TO BINDING ARBITRATION**: If any claim or controversy arising out of or related to this Rental-Purchase Agreement occurs, the parties will first attempt to resolve the claim or controversy through friendly consultation, directly or through counsel. If the claim or controversy is not resolved within a reasonable period, either party may bring suit against the other in a civil court unless any matter(s) has a demand for damages over $20,000.00, in which case the parties agree to waive their right to a jury trial and agree to submit the claims to binding arbitration as governed by the Federal Arbitration Act, and according to the rules established by the Judicial Arbitration and Mediation Services, Inc. (JAMS), or any other mutually agreed arbitration association. The parties agree that the arbitration will be held in Obion County, Tennessee before a single arbitrator mutually agreed upon by the parties. The parties will share equally in the cost of arbitration. **I UNDERSTAND THAT BY VOLUNTARILY AGREEING TO THIS BINDING ARBITRATION PROVISION I GIVE UP MY RIGHT TO A TRIAL BY JURY.**
    **CONSUMER'S RIGHT TO OPT-OUT:** If the Consumer decides that the Consumer does not want to arbitrate any dispute(s) with the Lessor, the Consumer must notify the Lessor in writing at the Lessor's address on page one (1) no later than thirty (30) days after the date of this Agreement.
22. The parties agree this Agreement is the complete and exclusive statement of the Agreement between the Consumer and Lessor and supersedes all prior written or oral communications, representations, and agreements relating to the subject matter of this Agreement. The terms of this Agreement shall not be changed except in writing signed by both parties.
23. **Authorization to Conduct Transaction Electronically**: Consumer and Lessor agree this Agreement may be electronically signed. Consumer and Lessor agree any electronic signatures appearing on this Agreement are the same as handwritten signatures for validity, enforceability, and admissibility. Consumer and Lessor agree to conduct business electronically, including receiving future documents, notices, and disclosures electronically. The consumer may withdraw their consent to receive electronic documents, notices, or disclosures at any time. In order to withdraw consent, the Consumer must notify the Lessor of their intent to withdraw consent and request that future documents, notices, and disclosures be provided in paper format.
24. **By executing this Agreement, Consumer acknowledges and agrees that:**
    - **(a) Consumer has read and understands this Agreement.**
    - **(b) Consumer has been given a signed and legible copy of this Agreement with all blanks filled in.**
    - **(c) Consumer has received the Leased Property in good condition.**
    - **(d) Consumer hereby acknowledges the Lessor maintains the right to assign this contract to a third party and further agrees to remit rental payments to such party if so assigned.**

IN WITNESS WHEREOF, the parties have hereunto affixed their signatures this the 10th day of January, 2025.

**LESSOR:**
**BHR MANAGEMENT.**

By: Heather Hand

**NOTICE TO CONSUMER:**

***DO NOT SIGN THIS AGREEMENT BEFORE YOU READ ALL 5 PAGES OF IT OR IF IT CONTAINS ANY BLANK SPACES. YOU ARE ENTITLED TO A COPY OF THE AGREEMENT YOU SIGN.***

| **CONSUMER:** | **ADDITIONAL CONSUMER:** |
|---|---|
| Name: Clifton Holloway | Name: |
| S.S.N. [redacted] | S.S.N.: |
| Driver' | Driver's License No.: |
| Issue [ | Issue Date: Exp. Date: |
| Address: 123 Holly Hill Road | Address: |

[redacted]

**BHR MANAGEMENT.**

City/State/Zip: Jayess, MS, 39641
E-mail Addres [redacted]
Home Phone [redacted]
Cell Phone No [redacted]
Employer Nam [redacted]
Employer Pho [redacted]

City/State/Zip: ____________________
E-mail Address: ____________________
Home Phone No.: ____________________
Cell Phone No.: ____________________
Employer Name: ____________________
Employer Phone No.: ____________________

**REQUIRED REFERENCES**

Name: [redacted]
Addres [redacted]
City/St [redacted]
Phone [redacted]

Nam [redacted]
Addr [redacted]
City/ [redacted]
Phon [redacted]

**Legal owner/landlord of the real property where the Leased Property is to be located:**

Name(s): ____________________
Address: ____________________
City/State/Zip: ____________________
Home Phone No.: ____________________
Business Phone No.: ____________________
E-mail Address: ____________________ (if available)

**I hereby affirm that all statements made herein are true, factual, and complete to the best of my knowledge and are made for this Agreement. By execution of my signature below, I agree to be bound by the terms and conditions of this Agreement. Any attempt to sell, by any means - digital, printed, or word of mouth - before payment of the contract in full, will be viewed as a direct violation of the contract and will result in immediate repossession by the said rental company (Lessor).**

____________________
**Consumer Signature**

____________________
**Additional Consumer Signature**

**ASSIGNMENT (FOR INTERNAL OFFICE USE ONLY)**

Lessor sells and assigns to ____________________ its successors and assigns, all rights, title, and interest in this Rental-Purchase Agreement and Disclosure Statement. The Lessor gives the assignee full power, either in its name or in the Lessor's name, to take all legal and other actions that the Lessor could have taken under this Agreement.

Lessor: Name: ____________________ Date: ____________________
Position: ____________________